### DWIGHT & HARTMAN *vs.* BEMISS ET AL.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF ST. MARY, THE JUDGE OF THE SIXTH PRESIDING.

Persons who are not creditors of an insolvent debtor, may purchase and receive transfers of his property after he is in insolvent circumstances, and it cannot be complained of by his creditors, when they appear to be purchasers for a valuable consideration, and in good faith.

But, if an insolvent debtor use the proceeds of sales of his property, in such a manner as to give a preference to one creditor over another, the law will interfere and correct it.

Where a creditor receives a note from his debtor, to collect and pay himself, he is bound to use due and proper diligence to collect it, or he will be charged with the amount.

This is a revocatory action. The plaintiffs, who were creditors of John B. Bemiss, an insolvent debtor, instituted this their revocatory action against him and others, to whom

WESTERN DIST. he made sales or transfers of his property, on the eve of insol-
September, 1840. vency, in fraud of them as *bona fide* creditors. They allege,
DWIGHT & HART- that being in insolvent circumstances, and indebted to them,
MAN in the sum of six hundred and forty dollars, he sold and trans-
vs. ferred to one Judson Harman, a carriage worth four hundred
BEMISS ET AL. and seventy dollars, with a view of giving him an unjust preference as a creditor; and also that he sold and conveyed to Donelson Caffrey, John E. Carson, Milton and Thomas Johnson, a slave named Henry; and that these conveyances were made for the purpose of defrauding them, and giving unjust preferences to others. They pray that these sales be annulled, and the property restored; that they have judgment against Bemiss for the amount of their demand, and that this property be sold to satisfy the same.

The defendants, Milton Johnson and Caffrey, failed to answer. Harman pleaded the general issue; and Carson and Thomas Johnson, denied all fraud, and averred they were not creditors of Bemiss, but purchased the slave Henry, in good faith, and in the ordinary course of business.

Bemiss, the principal debtor, admitted the execution of the note sued on, and averred it was given on a settlement, for a balance due the plaintiffs. He denied all fraud, and explained the several transfers of his property complained of.

On the evidence adduced, there was a verdict against Bemiss for the amount of his note; and against Harman for four hundred and seventy dollars, the price or value of the carriage; and also against Carson and Thomas Johnson, for eight hundred dollars, the price or value of the slave; also annulling all the sales, and transfers. There was judgment, on this verdict, against Bemiss, Harman, Carson and Thomas Johnson, and also against Milton Johnson, not included in the verdict, and discharging Caffrey. Three of the defendants appealed.

The facts on which this case turns, are more fully explained in the opinion of the court.

*Splane,* for the plaintiffs, contended that the judgment should be affirmed, being fully supported by the evidence.

The law gives the complaining creditor the right to attack and have annulled, all sales and transfers of property made by the insolvent to one set of creditors or persons, in preference of other and *bona fide* creditors.

WESTERN DIST.
*September*, 1840.

DWIGHT & HART-
MAN
*vs.*
BEMISS ET AL.

*T. H.* and *W. B. Lewis,* for the appellants, insisted that it was only sales and transfers of the insolvent debtor's property, made by him to creditors, in preference of other creditors, that can be attacked in this mode of proceeding. The defendants, Johnson and Carson, not being creditors of Bemiss, the sale to them, of the slave in question, is good. It is not giving a preference to one creditor over others, but is a *bona fide* sale, and in the ordinary course of business. 6. *Louisiana Reports,* 538.

2. Johnson and Carson gave a good and valuable consideration, in cash, for the slave, which was paid to Caffrey. They, not being creditors, had the right to purchase, and the insolvent had a right to sell his property for cash, as long as he was in possession. What he may have done with the money is another matter. It cannot affect the appellants.

3. Creditors must show that they have been injured by the transactions of their debtor, before they can set them aside in the revocatory action. *Louisiana Code,* 1973.

4. The defendant is entitled to a credit for the amount of Allen's note, because the plaintiffs received it to collect and account for the proceeds. They have neglected, or failed to collect it, through their own fault or mismanagement, and must be charged with its amount.

5. In contracts by insolvent debtors, it must be shown that those who claim the benefit of such contracts knew of his insolvency otherwise they are not liable. There is no evidence that the appellants knew of the insolvency of Bemiss. 4 *Louisiana Reports,* 256. *Louisiana Code,* 1980, 1979.

6. If contracts with insolvent persons be onerous, they cannot be set aside, unless the person who contracts with the insolvent acted in bad faith, even though there may have been a design to defraud, on the part of the debtor, except when the property has been sold for one fifth less than its value. *Idem.,* 1974–5–6.

WESTERN DIST.
September, 1840.

DWIGHT & HART-
MAN
vs.
BEMISS ET AL.

*Garland, J.,* delivered the opinion of the court.

The plaintiffs sue John B. Bemiss, to recover six hundred and forty dollars, with interest, due on two promissory notes. They make Judson Harman and Milton Johnson, parties, alleging that Bemiss was in insolvent circumstances, and that he had transferred to them, or one of them, a carriage of the value of about four hundred and seventy dollars, with a view of giving an unjust preference to them or some others of his (Bemiss') creditors. They also made Donelson Caffrey, John E. Carson and Thomas Johnson, defendants, alleging, that the former as the agent of Bemiss, or at his instance, had conveyed to the two latter a slave named Henry, for the purpose of paying them a pretended debt, when in fact, Bemiss was not in any manner indebted to said Carson and Johnson. There are other allegations in the petition, in relation to other property, which it is not necessary to notice, as all the litigation before us has been in relation to the carriage and the slave Henry. The plaintiffs say, all the conveyances were made for the purpose of defrauding them, and giving unjust preferences to others. Caffrey and Milton Johnson filed no answer, and a judgment by default was rendered against them. Harman's answer is equivalent to a general denial. Thomas Johnson and Carson, in their answers, deny any fraud, they say they were not creditors of Bemiss in any manner, that they purchased the slave in good faith, for a valuable consideration, in the ordinary course of business, and their object was not to aid in giving an improper preference to any creditor. Bemiss, in his answer, says he signed the notes sued on, that they were given for balances due the plaintiffs, by himself, and the firm of Bemiss, Brashear & Co., on a settlement that took place a few days previous to their dates, in the course of which he made various payments to plaintiffs, and also gave them a note drawn by J. H. Allen, on which was due the sum of two hundred and fifty dollars, which they were to collect and place to his (Bemiss') credit. He further says, that the payments, transfers, &c., made to his co-defendants complained of, were not made in fraud of plaintiffs rights, or

those of any other person, but were made as similar trans-
fers and assignments were to plaintiffs, for the purpose of
discharging the debts he was owing.

The jury rendered a verdict against Bemiss, for the sum
of six hundred and forty dollars, and interest. They dis-
charged Caffrey from all liability, and they further found
against Harman, for four hundred and seventy dollars, the
price of the carriage, and against Carson and Thomas John-
son, for eight hundred dollars, the value of the slave.  They
say nothing about Milton Johnson, the other defendant, yet
the court renders a judgment against him, and also against
Bemiss, Harman and Carson, and Thomas Johnson, for the
sums above mentioned, and discharge Caffrey from all lia-
bility.   From this judgment, Harman, Carson and Thomas
Johnson have appealed.

An inspection of the record, together with those in the
cases of Walton & Son, against Bemiss, Brashear & Co.,
and others, and the present plaintiffs against them and
others, which have come up with this, show that, at the trial,
there was a continuation of the scramble and confusion,
which commenced when the insolvency of Bemiss and his
partners became known, and which accounts for some of
the errors into which the court below has fallen.   Harman
is condemned to pay the value of the carriage, in two differ-
ent judgments, signed on the same day, when the court had
in one of them, decided that the plaintiffs had no claim upon
it, and had dismissed their intervention on that ground.

The evidence in the case, creates a strong impression on
our minds, that the plaintiffs do not come into court with un-
soiled hands, their notes being dated at a time when they
say, themselves, that Bemiss was insolvent, and it appears
by their receipt for Allen's note, that they were endeavoring
to secure something from the wreck, and obtain that prefer-
ence for themselves, which they complain of so much in
others.

As we have in the case of Walton & Son, against Bemiss,
Brashear & Co., just decided, reversed the judgment, and
permitted the plaintiffs to come in with them, for their share

WESTERN DIST. of the claim against Harman, the judgment against him in
September, 1840. this case must be reversed, as it is not just he should pay
DWIGHT & HART- twice.
MAN
vs.          The plaintiffs specially state, in their petition, that Carson
BEMISS ET AL. and Thomas Johnson were not creditors of Bemiss at the
Persons who
are not creditors time Caffrey made the sale of the negro to them, and they
of an insolvent say the same. There is no evidence in the record to show
debtor, may
purchase, and re- they were creditors, or that they were interposed to give an
ceive transfers
of his property, undue preference to others, who were creditors. And admit-
after he is in in-
solvent circum- ting for the argument, that they were interposed, we do not
stances, and it see how the plaintiffs could recover without making the
cannot be com-
plained of by his favored creditors parties to the suit. As the transaction is
creditors, when
they appear to presented to us, the evidence is insufficient to establish
be purchasers
for a valua- bad faith in Carson and Thomas Johnson; they appear to
ble considera- be purchasers for a valuable consideration, and we cannot
tion and in good
faith. agree with the jury as to the correctness of their verdict.
The purchase of the slave seems to have been in the ordina-
ry course of business, and ought not, in our opinion, to be
annulled upon the evidence now before us. A person in em-
barrassed, or even in insolvent circumstances, may sell his
property to another, for a valuable consideration, but if he
But if an in- use the proceeds in such a manner as to give a preference to
solvent debtor one creditor over another, the law will interfere and correct
use the proceeds
of sales of his it, but with that the purchaser has nothing to do, unless he
property, in
such a manner is a party to the fraud, and interposed for the purpose of per-
as to give a pre-
ference to one petrating it. *Louisiana Code, articles* 1973–74–75–76.
creditor over
another, the law          As this case must be remanded, it is necessary, to a correct
will interfere
and correct it. decision of it, that the effect of the receipt given by plaintiffs
Where a credi-
tor receives a to Bemiss, for Allen's note, be decided. We are of opinion
note from his
debtor to collect that, if it shall appear, on the trial, that the plaintiffs have
and pay himself, used due diligence in endeavoring to collect that note, and
he is bound to
use due and pro- could not do so, then they are not to be charged with it; but
per diligence to
collect it, or he if proper diligence has not been used, then they ought to be
will be charged charged with it. If Allen was notoriously insolvent, a
with the amount. knowledge of that fact will excuse them.

It is, therefore, ordered, adjudged and decreed, that judg-
ment of the District Court be annulled and reversed, the

verdict of the jury be set aside, so far as they concern the
defendants, Judson Harman, John E. Carson and Thomas
Johnson.    That a judgment be entered in favor of said Har-
man ;  he having in the suit of *M. Walton & Son* vs. *Bemiss,
Brashear & Co. et al.*,  been condemned to pay the value of
the carriage, to said Walton & Son, and the plaintiffs.    It is
further ordered and decreed, that as relates to the defendants
Carson and Thomas Johnson, this cause be remanded for a
new trial, to be proceeded in according to law ; and as to the
distribution of the amount to be collected from Harman, it is
to be made upon the principles settled in the suit of *M. Wal-
ton & Son* vs. *Bemiss, Brashear & Co. et al.*,  in which these
plaintiffs are intervenors :    It is further ordered, that the
plaintiffs pay the costs of this appeal.